# NO. 22-1877

In The

# United States Court Of Appeals
### For The Fourth Circuit

**SARA ZITO, on behalf of herself and all others similarly situated;
ALVARO SARMIENTO, JR., on behalf of himself and all others similarly
situated; MARK SHINN, on behalf of himself and all others similarly situated;
DANIEL BERMUDEZ, on behalf of himself and all others similarly situated,**

*Plaintiffs - Appellants,*

v.

**STRATA EQUITY GROUP, INC., now known as
Strata Equity Global, Inc.; STRATA AUDUBON, LLC;
STRATA VERIDIAN, LLC; PINNACLE PROPERTY MANAGEMENT
SERVICES L.L.C.; CONSERVICE, LLC,**

*Defendants – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## AT CHARLESTON

———————————

## BRIEF OF APPELLANTS

———————————

**F. Elliotte Quinn, IV**
**Steven E. Goldberg**
**STEINBERG LAW FIRM, LLP**
**103 Grandview Drive**
**Summerville, SC 29483**
**(843) 871-6522**
**equinn@steinberglawfirm.com**
**sgoldberg@steinberglawfirm.com**

*Counsel for Plaintiffs - Appellants*

*Gibson*MOORE APPELLATE SERVICES, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>22-1877</u>        Caption: <u>Sarah Zito, et al. v. Strata Equity Group, Inc., et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Alvaro Sarmiento, Jr.</u>
(name of party/amicus)


_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?                                  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)        ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                              ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?              ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: s/Elliotte Quinn                          Date:        9/6/22

Counsel for: Plaintiffs-Appellants

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __22-1877__        Caption: __Sarah Zito, et al. v. Strata Equity Group, Inc., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Daniel Bermudez__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: s/Elliotte Quinn                              Date:        9/6/22

Counsel for: Plaintiffs-Appellants

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1877__        Caption: __Sarah Zito, et al. v. Strata Equity Group, Inc., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Mark Shinn__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                    ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐YES ☑NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: s/Elliotte Quinn                          Date:        9/6/22

Counsel for: Plaintiffs-Appellants

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _22-1877_    Caption: _Sarah Zito, et al. v. Strata Equity Group, Inc., et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Sarah Zito_
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
       If yes, identify all such owners:

12/01/2019 SCC    - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/Elliotte Quinn _____    Date: _____ 9/6/22 _____

Counsel for: Plaintiffs-Appellants _____

# TABLE OF CONTENTS

Page:

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF ISSUES ................................................................. 2

STATEMENT OF THE CASE .............................................................. 3

I.     Water and Sewerage Background .................................................. 5

II.    South Carolina Public Utility Law Background ............................. 8

III.   The Federal Action ...................................................................... 10

IV.   The Commission Proceeding ........................................................ 12

SUMMARY OF THE ARGUMENT .................................................... 14

STANDARD OF REVIEW ................................................................. 18

ARGUMENT ...................................................................................... 18

I.     The District Court erred in finding Appellants had an available
administrative remedy ................................................................. 18

II.    The District Court erred in holding that South Carolina's statutory public
utility law provides the exclusive remedy for Appellants' claims ................. 29

III.   The District Court erred in dismissing all of Appellants' claims where
Appellants assert alternative grounds for relief which are independent
of whether Appellees acted as a regulated utility ........................... 34

IV.   The District Court erred in not applying the primary jurisdiction
doctrine and instead dismissing the claims ................................... 38

CONCLUSION ..............................................................................................39

REQUEST FOR ORAL ARGUMENT ...................................................................40

CERTIFICATE OF COMPLIANCE .......................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................18

*Bethea v. Allen*,
    85 S.E. 903 (S.C. 1915) ..................................................................31

*Black River Elec. Coop., Inc. v. Pub. Serv. Comm'n*,
    120 S.E.2d 6 (S.C. 1961) ................................................................22

*In re Bulldog Trucking, Inc.*,
    66 F.3d 1390 (4th Cir. 1995) ..........................................................39

*Capital City Ins. Co. v. BP Staff, Inc.*,
    674 S.E.2d 524 (S.C. Ct. App. 2009) .............................................19

*Charleston Trident Home Builders, Inc. v. Town of Summerville*,
    632 S.E.2d 864 (2006) ....................................................................19

*E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*,
    637 F.3d 435 (4th Cir. 2011) ..........................................................35

*Grier v. AMISUB of S.C., Inc.*,
    725 S.E.2d 693 (S.C. 2012) .......................................................31-32

*Harrison v. U.S. Postal Serv.*,
    840 F.2d 1149 (4th Cir. 1988) ........................................................35

*Lowell Gas Co. v. Attorney General*,
    385 N.E.2d 240 (Mass. 1979)..........................................................28

*Martin v. Carolina Water Services, Inc.*,
    254 S.E.2d 52 (S.C. 1979) .........................................................26, 27

*Nelson v. Public Serv. Co.*,
    402 A.2d 623 (N.H. 1979) ..............................................................28

*Noller v. Daufuskie Island Utility Co.*,
    No. 2019-001354, 2022 WL 3225393
    (S.C. Ct. App. Aug. 10, 2022) .........................................................................26

*Nucor Steel v. S.C. Pub. Serv. Comm'n*,
    426 S.E.2d 319 (S.C. 1992) ...........................................................................22

*Penny v. Southwestern Bell Telephone Co.*,
    906 F.2d 183 (5th Cir. 1990) ...................................................................27, 28

*Petition of State ex rel. Hutchinson*,
    189 S.E. 475 (S.C. 1937) ...............................................................................31

*Philips v. Pitt Cnty. Mem'l Hosp.*,
    572 F.3d 176 (4th Cir. 2009) ...........................................................................5

*Reiter v. Cooper*,
    507 U.S. 258 (1993)...................................................................19, 20, 21, 39

*Ross v. Blake*,
    578 U.S. 632 (2016)......................................................................................19

*State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*,
    777 S.E.2d 176 (S.C. 2015) ..........................................................................32

*Stinney v. Sumter School Dist. 17*,
    707 S.E.2d 397 (S.C. 2011) ...........................................................19, 20, 21

*Summers v. Altarum Inst., Corp.*,
    740 F.3d 325 (4th Cir. 2014) ........................................................................18

*Thomas Sand Co. v. Colonial Pipeline Co.*,
    563 S.E.2d 109 (S.C. Ct. App. 2002) ...........................................................19

*U.S. v. Philadelphia Nat. Bank*,
    374 U.S. 321 (1963)......................................................................................39

*U.S. v. W. Pac. R.R. Co.*,
    352 U.S. 59 (1956)........................................................................................39

iv

**Public Service Commission of South Carolina Proceedings**

*In re Alex*,
 Order No. 2018-625, 2018 WL 4635879
 (S.C.P.S.C. Sept. 19, 2018) .................................................................. 23-24

*In re Berry*,
 Order No. 2019-874, 2019 WL 7342325
 (S.C.P.S.C. Dec. 18, 2019) ......................................................................23

*In re Bowens*,
 Order No. 2009-619, 2009 WL 9567563
 (S.C.P.S.C. August 31, 2009)...................................................................24

*In re Generic Proceeding Related to Sub-Metering of Electric,*
 *Water and Wastewater Services*,
 Order No. 1999-307 (S.C.P.S.C. May 4, 1999) .........................................5, 6

*In re Noller*,
 No. 2018-364-WS (S.C.P.S.C. June 21, 2019) ...........................................25

*In re Noller*,
 Order No. 2019-424, 2019 WL 2504058
 (S.C.P.S.C. June 12, 2019) ......................................................................25

*In re Noller*,
 Order No. 2019-523, 2019 WL 3306757
 (S.C.P.S.C. July 17, 2019)...................................................................22, 25

*In re Rule to Show Cause on Submeterers*,
 Order No. 2003-214, 2003 WL 23325952
 (S.C.P.S.C. April 15, 2003) ......................................................................6

*In re Seahorse Investment*,
 Order No. 2008-725, 2008 WL 9903512
 (S.C.P.S.C. Oct. 28, 2008).......................................................................6

*In re Tarmann*,
 No. 2008-700, 2008 WL 9903506 (S.C.P.S.C. Oct. 9, 2008)......................24

*Zito v. Strata Audubon, LLC*,
2022-84-WS (S.C.P.S.C. Feb. 22, 2022)........................................................12

*Zito v. Strata Audubon LLC*,
2022-84-WS (S.C.P.S.C. May 4, 2022) ..................................................13, 29

*Zito v. Strata Audubon, LLC*,
2022-84-WS (S.C.P.S.C. May 26, 2022) ......................................................13

**Statutes**

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1332 ........................................................................................1

S.C. Code Ann. § 27-40-50 ........................................................................33

S.C. Code Ann. § 27-40-310 ......................................................................33

S.C. Code Ann. § 27-40-610 ......................................................................33

S.C. Code Ann. § 39-5-20 ..........................................................................32

S.C. Code Ann. § 39-5-140 ........................................................................32

S.C. Code Ann. § 39-5-160 ........................................................................32

S.C. Code Ann. § 58-3-140 ..........................................................................8

S.C. Code Ann. § 58-4-5 ..............................................................................8

S.C. Code Ann. § 58-5-10 ............................................................................9

S.C. Code Ann. § 58-5-210 ..........................................................................9

S.C. Code Ann. § 58-5-240 ..........................................................................9

S.C. Code Ann. § 58-5-270 ....................................................10, 22, 25, 26

S.C. Code Ann. § 58-5-290 ....................................................................9, 23

S.C. Code Ann. § 58-5-370 ....................................................................9, 21

S.C. Code Ann. § 58-5-710 ........................................................25

S.C. Residential Landlord and Tenant Act,
    S.C. Code Ann. §§ 27-40-10, *et seq.* ............................4, 12, 31, 33

S.C. Unfair Trade Practices Act,
    S.C. Code Ann. §§ 39-5-10, *et seq.* .......................4, 12, 31, 32, 33

**Regulations**

S.C. Code Ann. Regs. 103-503 ...................................................9

S.C. Code Ann. Regs. 103-703 ...................................................9

**Treatises**

73B C.J.S. *Public Utilities* § 246 (2020) ...................................27

Black's Law Dictionary 1320 (8th ed. 2004) .........................19

**Rules**

Fed. R. Civ. P. 8 ...............................................................34, 35

Fed. R. Civ. P. 12 .......................................................18, 34, 35

Fed. R. Evid. 201 ...................................................................5

S.C. R. App. P. 244 .............................................................14

**Other Authorities**

Applicability of the Safe Drinking Water Act to Submetered
    Properties, 68 Fed. Reg. 74,233-01, 2003 WL 22996790 (Dec.
    23, 2003) ...........................................................................6

Federal Trade Commission, Policy Statement on Unfairness
    (Dec. 17, 1980) .................................................................32

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(d).  The District Court issued a final judgment dismissing all claims on July 18, 2022, and Appellants filed a timely notice of appeal on August 15, 2022.  JA446, JA447.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.  Did the District Court err in finding Appellants had an available administrative remedy?

2.  Did the District Court err in holding that South Carolina's statutory public utility law provides the exclusive remedy for Appellants' claims?

3.  Did the District Court err in dismissing all of Appellants' claims where Appellants assert alternative grounds for relief which are independent of whether Appellees acted as a regulated utility?

4.  Did the District Court err in not applying the primary jurisdiction doctrine and instead dismissing the claims?

## STATEMENT OF THE CASE

For the context necessary for an in-depth discussion of the factual and legal background for this appeal, this action arises from apartment owners and their agents—Appellees—who supplied water and sewerage to tenants—Appellants and the members of the putative class—at a rate different from what the owners paid to the area-wide utility for the water and sewerage, without measuring the actual water and sewerage usage of any apartment and instead using an allocation formula to divide the total usage at the apartment complex and allocate it to the tenants, including in the allocation formula and thereby charging the tenants for the water and sewerage used in the common areas of the properties, and charging the tenants administrative fees for allocating and billing the water and sewerage in addition to the allocation formula charge.  Appellants contend that conduct made Appellees a public utility subject to regulation of rates by the Public Service Commission of South Carolina (the "Commission").  Appellants' contention that Appellees are a regulated public utility is the result of the plain, unambiguous language of South Carolina's public utility law, Title 58 of the South Carolina Code, and the decisions of the Commission interpreting and applying Title 58.  Appellees never sought Commission approval of the rates charged to tenants for water and sewerage, and therefore, Appellees charged an unlawful rate.

3

Because the Commission is a regulatory agency of limited authority generally only able to prospectively address utility rates by determining the rate a utility may charge in the future and unable to award money damages or redress past conduct by a utility, Appellants brought suit against Appellees asserting breach of contract, South Carolina Residential Landlord and Tenant Act, Sections 27-40-10, *et seq.* of the South Carolina Code of Laws ("Landlord Act"), negligence, unjust enrichment, South Carolina Unfair Trade Practices Act, Sections 39-5-10, et seq. of the South Carolina Code of Laws ("Unfair Trade Practices Act"), declaratory judgment, injunctive, and statutory penalty claims. Appellants claim Appellees are liable under those claims because Appellees charged an unlawful rate, and Appellants also claim that even if Appellees were not a regulated public utility, Appellees would still be liable because the allocation formula rate charged is an unfair practice and was unreasonably applied such that it violates the contracts with tenants, violates the Landlord Act, violates the duty of care, unjustly enriched Appellees, and violates the Unfair Trade Practices Act.

Appellees moved to dismiss on the grounds that the Commission provides an administrative remedy for Appellants' claims and Appellants failed to exhaust that administrative remedy. For good measure, Appellees also asserted the purported administrative remedy provided by the Commission is the exclusive remedy available to Appellants. While acknowledging the Commission has exclusive jurisdiction over utility ratemaking, Appellants opposed the motion on the grounds they are not seeking the review of rates charged by Appellees. Rather,

4

Appellants seek to recover money damages for unlawful rates charged by Appellees, and Title 58 and the Commission provide no remedy for such unlawful rates. Despite neither Appellees nor the District Court identifying any specific administrative remedy available to Appellants or any statutory language or judicial decision providing that any administrative remedy in Title 58 is the exclusive remedy available, the District Court granted the motion and dismissed all of Appellants' claims on the grounds Appellants failed to exhaust the available administrative remedy and such administrative remedy is the exclusive remedy available.

## I.    Water and Sewerage Background

Water and sewerage services can be provided to apartment complex tenants in multiple ways. *In re Generic Proceeding Related to Sub-Metering of Electric, Water and Wastewater Services*, Order No. 1999-307 (S.C.P.S.C. May 4, 1999). [1] One uncontroversial way of providing those services is to have the utility servicing the area run its pipes up to and install a meter at each apartment. The tenants then contract directly with the area-wide utility for services. The utility uses that meter to measure the amount of water and sewerage used by each apartment and bills each

---

[1] The Commission order cited here and all filings with and orders of the Commission referenced in this brief are publicly available government records available through the Commission's Docket Management System at www.psc.sc.gov and of which the Court can take judicial notice. *See* Fed. R. Evid. 201(b); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

apartment's occupants accordingly, with the landlord playing no role in providing or billing for the water and sewerage.

A second uncontroversial way of providing those services is to have the area-wide utility run its pipes to the landlord's property with a meter at the connection point (the "master meter"). *Id.* at 3. The landlord then runs a pipe with a meter (the "submeter") to each apartment and charges the tenant only for that portion of the amount the area-wide utility charged the landlord that is directly attributable to that apartment as determined by the usage measured by the submeter. *See, e.g.*, *id.*; Applicability of the Safe Drinking Water Act to Submetered Properties, 68 Fed. Reg. 74,233-01, 74,233, 2003 WL 22996790 (Dec. 23, 2003). In this "secondary meter" or "pass-through" form of providing water and sewerage, the tenants pay the same as what they would pay if they had contracts with and direct connections to the area-wide utility. This pass-through method of providing water and sewerage to tenants is a method the Commission has decided does not render an entity a public utility because the entity is just passing through the service and associated charge to the tenant. *See In re Seahorse Investment*, Order No. 2008-725, 2008 WL 9903512 (S.C.P.S.C. Oct. 28, 2008); *In re Rule to Show Cause on Submeterers*, Order No. 2003-214, 2003 WL 23325952 (S.C.P.S.C. April 15, 2003). Appellees contend this pass-through method is how they provide water and sewerage to their tenants but with what they contend is a minor and insignificant difference—Appellees do not

have submeters, do not measure tenant's actual usage, and instead use a formula to allocate charges. That difference is critical and causes Appellees to be a regulated public utility.

The third, controversial method of providing water and sewerage to tenants and the method actually used by Appellees is the "allocation formula" or "ratio utility billing system" method. Submetered Properties, 68 Fed. Reg. at 74,233 n.4. In the allocation formula method, the only meter is the master meter at the connection point between the area-wide utility and the landlord. *See id.* There is no metering between the landlord's pipes and each apartment. Instead, the landlord creates a formula by which it allocates to each tenant a portion of the total usage at the property. *Id.* The landlord provides water and sewer to the tenants and then bills the tenants for that service using the landlord's allocation formula. *Id.*

Appellants contend the allocation formula method of providing water and sewerage is grossly unfair. A tenant subject to an allocation formula has no control over the charges the tenant incurs. A tenant can take extreme measures to conserve water, and the measures will have essentially no impact on his bill. *See id.* A military servicemember, flight attendant, or anyone who is away from an apartment for days or weeks at a time for work and not using any water or sewerage during those periods would still have to pay for usage by the other tenants. Tenants also have no way to know or verify the accuracy of the landlord's inputs for the allocation

7

formula calculation each month—the total usage at the complex, the total number of tenants, and the amount the landlord paid for the total usage. Accordingly, the allocation formula method is ripe for abuse by landlords to the detriment of tenants.

The tenants also pay for the common area usage by the landlord. The result is that the landlord has no incentive to conserve water usage because the tenants pay for it, and the landlord is incentivized to use excessive amounts of water to make the apartment complex more attractive to prospective tenants by watering the landscaping excessively, refilling ponds when low, power-washing, and undertaking other water intensive activities. The added benefit for the landlord and unfairness for tenants is that the landlord can artificially lower rents because the landlord does not have to pay for water and sewerage in the common areas, use those lower rents to attract tenants and make the apartments more competitive in the market, and then extract those water and sewerage costs from the tenants through allocation formula billing.

## II.    South Carolina Public Utility Law Background

Like other states, South Carolina defines several business enterprises, ranging from electrical utilities to motor vehicle carriers, as a "Public Utility" and subjects the "rates and service" of a public utility to regulation by the Commission. S.C. Code Ann. §§ 58-3-140 & 58-4-5. The statutes governing public utilities and the Commission are set out in Title 58 of the South Carolina Code of Laws. Title 58

defines entities providing water and sewerage services as public utilities subject to regulation by the Commission, with Title 58 specifically defining the water and sewer utilities subject to regulation as including "every corporation and person furnishing or supplying in any manner . . . water, sewerage collection, sewerage disposal, . . . or any of them, to the public, or any portion thereof, for compensation." S.C. Code Ann. § 58-5-10(4).  Title 58 further provides that the term "public or any portion thereof" used in defining a water or sewer utility includes "any limited portion of the public" even if only "a person."  S.C. Code Ann. § 58-5-10(5).

Title 58 provides the Commission is "vested with power and jurisdiction to supervise and regulate the rates and service of every public utility" and "to ascertain and fix such just and reasonable standards, classifications, regulations, practices, and measurements of service to be furnished, imposed, observed, and followed by every public utility."  S.C. Code Ann. § 58-5-210.  Title 58 requires a utility to file a proposed rate for water or sewerage with and obtain approval from the Commission before the utility can charge customers that rate, and charging customers a rate not approved by the Commission is unlawful.  S.C. Code Ann. §§ 58-5-240 & 58-5-370; S.C. Code Ann. Regs. 103-503 & 103-703.  Title 58 also gives the Commission the power to determine that a rate charged by a water or sewer utility is "unjust" or "unreasonable" and order that a different rate be charged from that point forward. S.C. Code Ann. § 58-5-290.

Title 58 gives the Commission the power to hear consumer complaints regarding utility rates, providing the Commission has "jurisdiction to hear complaints regarding the reasonableness of any rates or charges." S.C. Code Ann. § 58-5-270. However, Title 58 does not give the Commission any power to redress the harms from a utility having charged customers an unreasonable rate. Additionally, Title 58 contains no language stating that a utility customer's exclusive remedy for unlawful conduct by a utility is to pursue a consumer complaint with the Commission.

## III.    The Federal Action

Appellants were tenants at two apartment complexes—the "Audubon Park Apartments" in Hanahan, South Carolina and the "Veridian Apartments" in Spartanburg, South Carolina—owned by Appellees Strata Equity Group, Inc.; Strata Audubon, LLC; and Strata Veridian, LLC (the "Strata Entities"), managed by Pinnacle Property Management Services, LLC ("Pinnacle"), and with the water and sewer billing performed by Conservice, LLC ("Conservice"). JA14. Pinnacle, acting for the Strata Entities, entered into leases with tenants, including Appellants, that provided for water and sewer services to be supplied and billed for using an allocation formula rate. JA15. The leases provided that tenants at the Aubudon property would be billed by "allocation based on the number of persons residing in your dwelling unit" and tenants at the Veridian property would be billed by

10

"allocation based on a combination of square footage of your dwelling unit and the number of persons residing in your dwelling unit."     JA60-61, JA100-101. Additionally, the leases provided that the water and sewerage usage on the common areas of the properties would be allocated to the tenants on the same basis and that the tenants would be charged new account fees, monthly administrative billing fees, late fees, and final bill fees.  JA61, JA101.

Compounding the unreasonable and unfair nature of allocation formula rates, here, Appellees failed to make any effort to ensure that only those persons listed on leases were living in the apartments.  Appellees failed to make any such effort despite knowing that persons not listed on leases were residing in apartments. Persons other than those listed on a lease living in an apartment alters any relationship between actual water and sewer usage by a tenant and the charges allocated to that tenant.  If a person not listed on a lease lived in an apartment, that person used water and sewerage thereby increasing the complex's total usage, but the allocation formula would not account for that person.

As the result of these unfair practices, Appellants filed suit against Appellees on September 22, 2020, in the South Carolina Court of Common Pleas.  JA14. Appellees removed the case to the United States District Court for South Carolina on October 29, 2020.  JA9.  On November 30, 2020, Appellees filed their Joint Motion to Dismiss seeking a dismissal of all claims on the grounds Appellants failed

to exhaust their administrative remedies, the administrative remedies are the exclusive remedies, and the Commission previously decided that an apartment complex providing water and sewerage is not a regulated public utility. JA36. On September 10, 2021, the District Court granted the motion as to all of Appellants' claims. JA420. Appellants moved for reconsideration on October 8, 2021, and the District Court denied the motion for reconsideration on July 18, 2022. JA431. Appellants timely filed a notice of appeal on August 15, 2022. JA447.

## IV.    The Commission Proceeding

After the District Court granted the motion to dismiss, Appellants completed the process set out in Title 58 for consideration of a consumer complaint by the Office of Regulatory Staff, and then filed a consumer complaint with the Commission on February 22, 2022. Compl., *Zito v. Strata Audubon, LLC*, 2022-84-WS (S.C.P.S.C. Feb. 22, 2022). In the proceeding before the Commission, Appellants assert the same claims against Strata Audubon and Strata Veridian as asserted in this case and additional claims for a declaration that they acted as a public utility, for a declaration that the rates they charged are unlawful because not approved by the Commission, for a declaration that the rates they charged are unjust, unreasonable, and unlawful, and for a refund of the charges.

In response, Strata Audubon and Strata Veridian moved to dismiss Appellants' breach of contract, Landlord Act, negligence, unjust enrichment, Unfair

12

Trade Practices Act, and injunctive relief claims on the basis the Commission lacks subject matter jurisdiction over the claims.  Mot. to Dismiss, *Zito v. Strata Audubon LLC*, 2022-84-WS (S.C.P.S.C. May 4, 2022).  Strata Audubon and Strata Veridian asserted in their motion to dismiss that "the only question properly before the Commission is whether Strata was operating a public utility."  *Id.* at 3.  On May 26, 2022, the Commission granted the partial motion to dismiss on the grounds the "Commission does not possess the required subject matter jurisdiction to adjudicate or grant the relief sought in these causes of action."  Comm'n Directive, *Zito v. Strata Audubon, LLC*, 2022-84-WS (S.C.P.S.C. May 26, 2022).

## SUMMARY OF THE ARGUMENT

As an initial matter, while the issues presented are within the diversity jurisdiction of the federal courts and Appellants contend South Carolina law precedent exists which dictates a reversal, Appellants submit that this case is a prime candidate for certification of the first and second issues to the South Carolina Supreme Court pursuant to Rule 244 of the South Carolina Rules of Appellate Procedure. The first and second issues in this appeal concern relatively obscure and undeveloped areas of South Carolina law, namely South Carolina public utility law, the South Carolina doctrine of failure to exhaust administrative remedies, whether the South Carolina public utility law provides the exclusive remedy for claims against a public utility, and the interplay between any remedy under the South Carolina public utility law and other South Carolina common law and statutory claims. Moreover, a reversal based on the first or second issue presented would resolve the majority of the appeal.

Turning to the merits of the appeal, Appellees and the District Court are using the complex interplay of South Carolina public utility law and South Carolina common law and statutory claims to create a donut hole in the law whereby Appellees can unlawfully act as a public utility charging unfair and arbitrary rates for water and sewerage but cannot be held accountable for that unlawful conduct. Were Appellees' and the District Court's position correct, a utility could unlawfully

fail to submit rates to the Commission for approval, and customers harmed by the unlawful rate would have no ability to seek redress for those harms. The donut hole of unaccountability created by the District Court is not only unfair and contrary to the public policy animating South Carolina's public utility law and the relevant common law and statutory laws, the donut hole of unaccountability is contrary to the applicable, established South Carolina law.

First, the District Court dismissed Appellants' claims on the basis that South Carolina's public utility law, Title 58 of the South Carolina Code of Laws, provides an administrative remedy for Appellants' claims and Appellants failed to exhaust that administrative remedy. However, the failure-to-exhaust-administrative-remedies doctrine only applies where there is an available administrative remedy, and other than an amorphous reference to a section of Title 58 that permits the Commission to hear consumer complaints, neither the District Court nor Appellees identified any remedy for Appellants' claims available under Title 58. Moreover, the statutory language in Title 58, the Commission decisions interpreting and applying Title 58, and judicial decisions from South Carolina and other jurisdictions, all make clear that Title 58 does not provide a remedy for Appellants' claims, there is no available administrative remedy, and the District Court erroneously dismissed Appellants' claims based on a failure to exhaust an administrative remedy.

Second, while there is no available administrative remedy, the District Court also erroneously held that any available administrative remedy is the exclusive remedy available to Appellants. Neither the District Court nor Appellees identified any South Carolina statute or judicial opinion providing that Title 58 is the exclusive remedy for the unlawful charging of water and sewerage rates not approved by the Commission. Rather, the District Court relied entirely on the fact that Title 58 does not create a private right of action to conclude that Title 58 provides the exclusive remedy. Whether a statute creates a private right of action is not the applicable legal standard for determining whether a statute creates an exclusive administrative remedy under South Carolina law. Applying the correct standard and reviewing the common law and statutory claims asserted by Appellants, even were there an administrative remedy available through Title 58, such remedy is not the exclusive remedy.

Third, Appellants assert alternative grounds for relief, asserting that even if Appellees did not act as a public utility subject to regulation by the Commission, Appellees are still liable for charging an unfair and inaccurate rate. The District Court, contrary to the applicable legal standards permitting a party to plead alternative grounds for relief and requiring a court deciding a motion to dismiss for failure to state a claim to construe the allegations in favor of the non-moving party and contrary to the express language in the Complaint stating the alternative

grounds, erroneously construed the allegations as only stating claims based on Appellees acting as a regulated public utility. Therefore, Appellants claims should still proceed on the alternative grounds for liability.

Finally, given the relatively obscure South Carolina public utility and administrative law issues, the specialized knowledge and competence of the Commission as to the regulation of South Carolina public utilities, and the District Court's position as a court in a separate judicial system with presumably limited familiarity with South Carolina public utility law, a desire to have the Commission first address whether Appellees acted as a regulated public utility is understandable. However, the vehicle for relieving those concerns is the primary jurisdiction doctrine whereby this case can be stayed while the issue of whether Appellees acted as a public utility is referred to and decided by the Commission and South Carolina's appellate courts. The vehicle for addressing those concerns is not to rule that Appellants have no remedy other than the nonexistent remedy in Title 58 and dismiss this case in its entirety, and the District Court erred in doing so rather than applying the primary jurisdiction doctrine.

For these reasons, the dismissal of this action should be reversed, and this case should be remanded to the District Court.

**STANDARD OF REVIEW**

An appellate court reviews de novo a district court's grant of a Rule 12(b)(6) dismissal. *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014). In reviewing a Rule 12(b)(6) dismissal, the appellate court accepts the pleaded facts as true and draws all reasonable inferences in the appealing party's favor. *Id.* To survive a Rule 12(b)(6) motion to dismiss, a complaint only "must state 'a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**ARGUMENT**

**I.    The District Court erred in finding Appellants had an available administrative remedy.**

As the name suggests, the doctrine of exhaustion of administrative remedies bars a party's claims only where there is an administrative remedy available to exhaust. Here, no such remedy exists. While the District Court dismissed Appellants' claims for "failure to exhaust the available administrative remedies," JA428-429, neither the District Court nor Appellees identified a purported "available administrative remedy." Therefore, because there is no available administrative remedy, the doctrine of exhaustion of administrative remedies cannot bar Appellants' claims.

The exhaustion doctrine only applies where a plaintiff seeks judicial adjudication of a statutory violation for which an administrative remedy exists. *See*

*Reiter v. Cooper*, 507 U.S. 258, 269 (1993); *Stinney v. Sumter School Dist. 17*, 707 S.E.2d 397, 398 n.1 (S.C. 2011); *Thomas Sand Co. v. Colonial Pipeline Co.*, 563 S.E.2d 109, 115 (S.C. Ct. App. 2002). If there is no administrative remedy available for a statutory violation, the doctrine cannot apply. *See Reiter*, 507 U.S. at 269; *Stinney*, 707 S.E.2d at 398 n.1; *Charleston Trident Home Builders, Inc. v. Town of Summerville*, 632 S.E.2d 864, 867 (2006); *Capital City Ins. Co. v. BP Staff, Inc.*, 674 S.E.2d 524, 529 (S.C. Ct. App. 2009); *Thomas Sand*, 563 S.E.2d at 115. A remedy is "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief." Black's Law Dictionary 1320 (8th ed. 2004). An administrative remedy is not "available" where the administrative process cannot provide any redress for the wrong, where it cannot provide any relief. *Ross v. Blake*, 578 U.S. 632, 643 (2016).

The South Carolina Supreme Court's decision in *Stinney* is particularly instructive as to when an administrative remedy does not exist and the exhaustion doctrine does not apply. In *Stinney*, two students were expelled from school, appealed the expulsion to the board of trustees which upheld the expulsions, and then instead of appealing the board's decision to the circuit court as permitted by the applicable statute, the students filed an action in court asserting claims for negligence and violation of their due process rights. *Stinney*, 707 S.E.2d at 399. The lower court granted summary judgment for the defendant school district on the basis

the claims were barred by the exhaustion doctrine, and on appeal the South Carolina Supreme Court held the doctrine "inapplicable." *Id.* at 398 n.1. The Court reasoned that the claim before the agency was an appeal of the expulsions, whereas the claims asserted in court were tort claims for damages. *Id.* The Court concluded the tort claims were not claims for statutory violations and therefore, were not claims for which an administrative remedy existed, and the exhaustion doctrine could not apply. *Id.*

Similarly instructive is the United States Supreme Court's decision in *Reiter* because the case involved comparable facts and claims and the Court found the exhaustion doctrine inapplicable. In *Reiter*, shippers tendered shipments to a motor carrier subject to regulation by the Interstate Commerce Commission ("ICC"). *Reiter*, 507 U.S. at 260–61. The shippers negotiated rates for shipments with the carrier lower than the carrier's tariff rates on file with the ICC, and after the carrier filed for bankruptcy, the bankruptcy trustee pursued claims against the shippers to recover the difference between the negotiated rate and the ICC tariff rate. *Id.* at 261–62. The shippers asserted as defenses that the ICC tariff rate was unreasonable and that the carrier engaged in unreasonable practices. *Id.* at 262. Addressing the shippers' argument that the claims could not be adjudicated in court and must be brought before the ICC, the Court found the exhaustion doctrine inapplicable because the ICC did not have the statutory power to provide a remedy and therefore

20

there was no available administrative remedy.  *Id*. at 269.  Notably, the Supreme

Court held there was no available administrative remedy even though the

reasonableness of the carrier's rate was an issue for the ICC.  The Court reviewed

the applicable statute, found no intent therein to require that the ICC determine the

reasonableness of a rate before a party could bring a civil action to recover for an

unauthorized rate, and concluded the agency's power to determine the

reasonableness of rates did not create any administrative exhaustion bar to pursuing

claims in court for unlawful rates.  *Id.* at 269–70.

Like *Reiter* and *Stinney*, here there was no administrative remedy available to

Appellants.  Appellants assert common law tort and contract claims and claims for

violations of statutes other than those administered by the South Carolina Public

Service Commission and seek money damages.[2]  The Commission is a regulatory

---

[2] In addition to those claims, Appellants assert one claim under Title 58 of the South Carolina Code which governs public utilities and the Commission, but that statute, Section 58-5-370, explicitly provides that the fine provided for is "to be recovered in any court of competent jurisdiction."  Appellants also assert claims for declaratory and injunctive relief which in part seek such relief on the basis that the water and sewerage rates charged by Appellees are unlawful rates not permitted by South Carolina law.  While the issue of whether the rates charged by Appellees are unlawful may be a legal issue the Commission has the power to decide, the exhaustion doctrine would not apply because the Commission does not have the power to decide declaratory judgment or injunctive relief claims and because the applicable statutes do not provide the Commission with the exclusive power to decide that issue in the first instance.  Even were Title 58 of the South Carolina Code to provide the Commission with the exclusive power to decide that issue, that would be a basis for exercising the primary jurisdiction doctrine and referring that issue to the Commission, not a basis for dismissing the case.

agency with only those powers conferred on it by statute.  *See Nucor Steel v. S.C. Pub. Serv. Comm'n*, 426 S.E.2d 319, 321–22 (S.C. 1992); *Black River Elec. Coop., Inc. v. Pub. Serv. Comm'n*, 120 S.E.2d 6, 11 (S.C. 1961).  Therefore, if the Commission has the power to award money damages to a consumer for an unlawfully charged water or sewerage rate, that power would have to be set forth in the South Carolina Code.

The District Court and Appellees did not identify any statute providing an administrative remedy for an unlawfully charged water or sewerage rate.  The closest the District Court or Appellees came was the District Court citing to Section 58-5-270 as indicating Appellants' claims "are precisely the type of claims that the available administrative remedies were designed to address," and Appellees citing the same statute as providing the Commission with "broad authority to correct any misconduct by a public utility."  JA45, JA428.  Section 58-5-270 permits ratepayers to petition the Commission regarding utility rates and allows the Commission to hear those petitions, but it does not provide an administrative remedy for Appellants' claims because there is nothing in that statute permitting the Commission to order the return of rates unlawfully charged.  The Commission recognizes that Section 58-5-270 gives it the power to hear complaints but does not give it the power to award monetary damages.  *See In re Noller*, Order No. 2019-523, 2019 WL 3306757 (S.C.P.S.C. July 17, 2019).

The other statutory provision potentially giving the Commission power over unlawful water and sewerage rates, Section 58-5-290, also does not provide an administrative remedy. Section 58-5-290 provides that when the Commission finds that rates, charges, or practices of a utility "are unjust, unreasonable, . . . or in any wise in violation of any provision of law, the Commission shall . . . determine the just and reasonable fares, tolls, rentals, charges or classifications, rules, regulations or practices to be thereafter observed and enforced and shall fix them by order as herein provided." While that statutory provision allows the Commission to correct rates moving forward, the statute does not permit the Commission to order the return of unlawfully charged rates. In other words, Section 58-5-290 gives the Commission the power to correct improper utility conduct moving forward but does not give it the power to remedy past improper conduct by providing any recovery for consumers.

Furthermore, the Commission does not have the authority to hear the claims asserted and cannot award the money damages sought. The Commission, due to its limited statutory powers, has repeatedly ruled that it cannot address such claims or award money damages. *See, e.g.*, *In re Berry*, Order No. 2019-874, 2019 WL 7342325 (S.C.P.S.C. Dec. 18, 2019) ("As the Commission lacks jurisdiction, his complaint is not properly before the Commission and must be dismissed because the Commission lacks jurisdiction to award money damages."); *In re Alex*, Order No.

2018-625, 2018 WL 4635879 (S.C.P.S.C. Sept. 19, 2018) ("[D]ue to the specific relief sought—money damages—through the Complainant's claims for property damage, that claim is dismissed as well. This Commission cannot grant the specific relief sought. This request for money damages is required to be handled by a court with jurisdiction over such damages."); *In re Bowens*, Order No. 2009-619, 2009 WL 9567563 (S.C.P.S.C. August 31, 2009) ("[Petitioner's] complaint raised . . . issues regarding . . . monetary damages for alleged negligence . . . which this Commission lacks jurisdiction to address."); *In re Tarmann*, Order No. 2008-700, 2008 WL 9903506 (S.C.P.S.C. Oct. 9, 2008) ("[T]he Commission has no statutory authority to award damages . . . .").

Most instructive among the Commission decisions, in *In re Noller* the Commission found there was no available administrative remedy in a situation analogous to this case. There, the petitioners were customers of a water utility, a water line was damaged by a hurricane, the petitioners asked the utility to replace the line and restore service to their properties, and the utility refused on the basis that replacement of the lines was the petitioners' responsibility. JA401. After the petitioners paid for the replacement of the line at their own expense, the utility entered into a service contract with the petitioners but continued to refuse to restore services to petitioners, and the petitioners filed a complaint with the Commission seeking an order requiring the utility to restore the services and to reimburse the

petitioners for the expenses they incurred in replacing the line.  JA401.  With the utility having restored service while the Commission proceeding was pending, the Commission dismissed the proceeding on the basis the restoration of service issue was moot and the request for monetary damages was not within the Commission's statutory authority.  *In re Noller*, Order No. 2019-424, 2019 WL 2504058 (S.C.P.S.C. June 12, 2019).

Requesting reconsideration, petitioners argued that the utility had not submitted the contract to and received approval of the contract from the Commission and therefore, the utility's failure to follow the regulatory process in relation to the contract came within the Commission's jurisdiction "over a utility that circumvents the usual rate making process."  Pet. for Recons. at 4, *In re Noller*, No. 2018-364-WS (S.C.P.S.C. June 21, 2019).  The petitioners also argued, like the District Court and Appellees here, that Section 58-5-270 and Section 58-5-710 of the South Carolina Code give the Commission statutory authority to provide monetary remedies.  *Id.*  The Commission rejected both arguments.  *In re Noller*, Order No. 2019-523, 2019 WL 3306757 (S.C.P.S.C. July 17, 2019).  The Commission held that while Section 58-5-270 does permit the Commission to hear complaints, it does not confer the authority to award monetary damages in response to such a complaint. *Id.*  The Commission also held that even where a utility action violates the regulatory process for approval of utility service contracts, that violation does "not grant the

25

Commission an ability it does not possess, i.e., we cannot grant monetary damages under an allegedly invalid contract," and the recovery of monetary damages for an unapproved contract "would be for a court of competent jurisdiction, not a proper matter for the [Commission]." *Id.* On August 10, 2022, in an unpublished decision, the South Carolina Court of Appeals affirmed, stating "the commission did not err by finding it lacked jurisdiction to award monetary damages." *Noller v. Daufuskie Island Utility Co.*, No. 2019-001354, 2022 WL 3225393 (S.C. Ct. App. Aug. 10, 2022).

Similarly, in *Martin v. Carolina Water Services, Inc.*, the Supreme Court of South Carolina recognized that an action for money damages under a contract with a utility is within the jurisdiction of a court and does not fall within any exclusive jurisdiction of the Commission. 254 S.E.2d 52 (S.C. 1979). There, the owner of a water company entered into a contract for the sale of the company, the contract provided that the company would not charge developers connection fees after the sale, the company then charged the plaintiff developer a connection fee, and the plaintiff sued for money damages and an injunction. *Id.* at 52–53. The defendant water company moved to dismiss on the basis the court lacked jurisdiction because the suit concerned the "fixing of rates and charges for a public utility, and the exclusive right to regulate such has been vested in the [Commission]." *Id.* at 53. The Supreme Court affirmed the trial court's denial of the motion, finding the action

26

did not involve a determination of rates, but rather concerned enforcement of a contract, and therefore, was not within any exclusive jurisdiction of the Commission. *Id.* at 53.

That legal principle—that the approval of utility rates is a regulatory function within the jurisdiction of the Commission and the recovery of monetary damages for improper utility conduct is a judicial function within the jurisdiction of courts—and the decisions of the Supreme Court of South Carolina and the Commission recognizing that principle are consistent with the generally recognized legal principle across the United States. *See, e.g.*, 73B C.J.S. *Public Utilities* § 246 (2020) ("[C]ourts . . . generally have jurisdiction over actions against public utilities for money damages, including most contract actions, and tort claims."). For example, the United States Court of Appeals for the Fifth Circuit applied that legal principle in *Penny v. Southwestern Bell Telephone Co.*, 906 F.2d 183 (5th Cir. 1990), an essentially factually indistinguishable case, and held the plaintiffs had not failed to exhaust their administrative remedies and the public service commission was not the plaintiffs' exclusive remedy where the plaintiff asserted a claim under the Texas Deceptive Trade Practices Act. Like Appellees here, the defendants in *Penny* argued the Texas public service commission had exclusive jurisdiction over the plaintiffs' claim. *Penny*, 906 F.2d at 185. The Fifth Circuit reasoned that while the Texas commission has exclusive jurisdiction over utility ratemaking, the Texas

commission "does not have exclusive jurisdiction over tort claims." *Id.* at 186. The Court reasoned the Texas commission "only has the power to *regulate* rates; it does not have the power to remedy past wrongs," and the commission "cannot have exclusive jurisdiction over claims involving requests for relief it is not authorized to grant." *Id.*

Similarly, the New Hampshire Supreme Court recognized that where a legal claim is that a ratepayer was overcharged and is owed money damages and the resolution of that claim does not require setting or determining the reasonableness of a utility's rate, courts decide the claim. *Nelson v. Public Serv. Co.*, 402 A.2d 623, 625 (N.H. 1979). The Massachusetts Supreme Judicial Court applied the legal principle and permitted a case to proceed without any prior proceeding before the Massachusetts public service commission where the suit did "not attack the validity of the rates." *Lowell Gas Co. v. Attorney General*, 385 N.E.2d 240, 244 (Mass. 1979). Rejecting the defendants' exhaustion of administrative remedies argument, the Court reasoned that the Massachusetts commission does not have the authority to award monetary damages and therefore, there was no administrative remedy available to exhaust. *Id.* at 245–46.

Finally, Appellees apparently agree that there is no available administrative remedy, with Strata Veridian and Strata Audubon arguing in the parallel proceeding before the Commission that the Commission lacks the authority to award damages

and that "the only question properly before the Commission is whether Strata was operating a public utility." Mot. to Dismiss at 3, *Zito v. Strata Audubon LLC*, 2022-84-WS (S.C.P.S.C. May 4, 2022). The acknowledgment that the Commission could declare Appellees to have acted as a regulated utility and engaged in the unlawful conduct of charging rates for water and sewerage not approved by the Commission but could not award Appellants any damages to correct that wrong is an acknowledgement that there is no available administrative remedy.

Accordingly, because there is no available administrative remedy that Appellants could have failed to exhaust, the District Court's dismissal of this action on the basis of a failure to exhaust administrative remedies is erroneous, and this Court should reverse the dismissal.

## II. The District Court erred in holding that South Carolina's statutory public utility law provides the exclusive remedy for Appellants' claims.

While not necessary to reach its decision to dismiss Appellants' claims, the District Court also held that South Carolina's public utility law is the exclusive remedy available to Appellants. The District Court's reasoning supporting its holding that the administrative remedy purportedly provided by South Carolina's public utility statutes is the exclusive remedy is solely that the South Carolina public utility statutes do not create a private right of action. The District Court's holding and reasoning are contained in three sentences in the Order. First, the Order states: "South Carolina's utility law provides exclusive administrative remedies to

[Appellants] and does not provide a private right of action."  JA426.  Second, the

Order states:

> Moreover, contrary to [Appellants'] assertion that any administrative
> remedies would not be exclusive, there is nothing in the plain language
> of the statute or the legislative history to indicate that the General
> Assembly also intended to create a private right of action.  Importantly,
> [Appellants] do not challenge the validity of South Carolina's utility
> law; rather, they assert that [Appellees'] actions violate South
> Carolina's utility law, and the Court finds that the wrongs that
> [Appellants] allege are precisely the types of claims that the available
> administrative remedies were designed to address.

JA428.

As set forth in the previous section, there is no available administrative

remedy in South Carolina's public utility statutes, and the lack of an available

administrative remedy is dispositive of this issue as well.  However, even setting

aside the lack of an available administrative remedy, Title 58 does not provide that

any remedy therein is the exclusive remedy available to harmed utility customers,

and the District Court's reasoning as to when a statute creates an exclusive remedy

is erroneous.

First, whether the South Carolina public utility law creates a private right of

action is a legal issue separate and distinct from whether the South Carolina public

utility law provides Appellants' exclusive remedy and displaces all other tort,

contract, and statutory claims that may provide a remedy.  Appellants do not assert

that the South Carolina public utility law creates a private right of action and rather,

assert common law tort and contract claims and claims based on statutes other than Title 58, so whether South Carolina's public utility law creates a private right of action is only relevant if the lack of a private right of action is determinative of whether a statute creates an exclusive administrative remedy.

Under South Carolina law, whether a statutory remedy is the exclusive remedy for a wrong is determined by whether the statute creates a new right or liability. *See Petition of State ex rel. Hutchinson*, 189 S.E. 475, 477 (S.C. 1937); *Bethea v. Allen*, 85 S.E. 903, 905 (S.C. 1915). The District Court did not consider whether, and Appellees did not argue that, South Carolina's public utility law creates a new right which Appellants seek to enforce. South Carolina's public utility law provides that, in exchange for the right to provide a utility service to the public with limited competition or free from competition, a utility must submit rates and terms of service to regulatory oversight and approval. Utilities receive new rights under South Carolina's utility law. Appellants merely contend that Appellees' evasion of that regulatory process results in liability to Appellants through the preexisting rights and remedies of common law contract, negligence, and unjust enrichment law and the separate statutory rights and remedies of the Landlord Act and the Unfair Trade Practices Act.

Moreover, for Appellants' common law claims, statutes are strictly construed when potentially in derogation of the common law, and a statute restricting the common law will not be extended beyond the clear intent of the legislature. *Grier*

31

*v. AMISUB of S.C., Inc.*, 725 S.E.2d 693, 696 (S.C. 2012). Therefore, for any administrative remedy in Title 58 to displace Appellants' common law claims, Title 58 would need to contain a clear expression of a legislative intent to bar any common law claims, and Title 58 contains no such language.

For the statutory claims, the Unfair Trade Practices Act provides: "The power and remedies provided by this article shall be cumulative and supplementary to all powers and remedies otherwise provided by law." S.C. Code Ann. § 39-5-160. Additionally, the Unfair Trade Practices Act creates a private right of action for recovery of damages caused by an "unfair" practice, and a practice can be an unfair practice because it violates other State law. *See* S.C. Code Ann. §§ 39-5-20(b) & 39-5-140; *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 196 (S.C. 2015); Federal Trade Commission, Policy Statement on Unfairness (Dec. 17, 1980), *available at* https://www.ftc.gov/legal-library/browse/ftc-policy-statement-unfairness. Therefore, the Unfair Trade Practices Act both expressly provides that it is cumulative to other remedies and provides a remedy for violations of other state laws, and neither the Unfair Trade Practices Act nor Title 58 contains any indication the General Assembly intended to exempt violations of Title 58 from being remedied through the Unfair Trade Practices Act.

Similarly, the Landlord Act provides that a landlord "may include in a rental agreement terms and conditions not prohibited by this chapter or other rule of law," that violations are enforceable through a civil action, and that an aggrieved party can recover damages. S.C. Code Ann. §§ 27-40-50 & 27-40-310. The Landlord Act also provides that an aggrieved party can recover damages and attorney's fees for a landlord's failure to comply with the terms of a rental agreement. S.C. Code Ann. § 27-40-610. Neither the Landlord Act nor Title 58 contain any indication the South Carolina General Assembly intended to exempt a claim for an unlawful provision in a rental agreement regarding water and sewer services from the remedy provided by the Landlord Act. Therefore, the Landlord Act provides a remedy independent of Title 58.

Therefore, there is no statutory support for the District Court's holding that any remedy provided by Title 58 is the exclusive remedy for a tenant charged an unlawful allocation rate for water and sewerage. Moreover, the Unfair Trade Practices Act and the Landlord Act contain statutory language indicating they provide remedies cumulative to and not eliminated by Title 58. For these reasons, even were there an available administrative remedy, which there is not, such administrative remedy would not be the exclusive remedy and would be cumulative to Appellants' claims. The District Court's Order should be reversed for erroneously holding that any remedy in Title 58 is the exclusive remedy available to Appellants.

33

**III.  The District Court erred in dismissing all of Appellants' claims where Appellants assert alternative grounds for relief which are independent of whether Appellees acted as a regulated utility.**

The District Court erroneously dismissed all of Appellants' claims despite the existence of alternative grounds that do not require that Appellees have acted as a regulated public utility.  While implicitly acknowledging that there are alternative grounds of liability independent of any liability resulting from Appellees acting as a regulated utility, the District Court dismissed all the claims solely on the grounds that "the basis of all of [Appellants'] claims . . . is the assertion that [Appellees] charged unauthorized and unreasonable rates as public utilities, in violation of South Carolina's utility law."  JA425.  That finding is contrary to the law governing alternative pleadings under Rule 8 of the Federal Rules of Civil Procedure, contrary to the law governing a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, not supported by the record, and an improper basis for dismissing Appellants' claims in their entirety.

First, the Federal Rules of Civil Procedure explicitly provide that a party can plead alternative grounds for claims, including stating such alternative grounds within one claim, and that if a party pleads alternative grounds for a claim, "the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2).  Rather than apply Rule 8 and consider whether any of the grounds asserted by Appellants is sufficient, the District Court did the opposite, construing Appellants'

claims as stating only one ground for the claims, and finding that ground insufficient to state a claim. The District Court's failure to apply Rule 8 is an error requiring reversal.

Second, Appellees moved to dismiss pursuant to Rule 12(b)(6), and courts are not to dismiss a complaint under Rule 12(b)(6) "unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988). In reviewing a complaint under Rule 12(b)(6), a court must accept all the factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Here, instead of drawing all reasonable inferences in favor of Appellants and seeking to determine whether there was any legal theory plausibly suggested by the allegations that was not based on whether Appellees acted as a regulated utility, the District Court did the exact opposite. The District Court construed Appellants' claims as all based on whether Appellees acted as a regulated utility, thereby drawing the inferences in Appellees' favor. The District Court failed to consider the legal theories Appellants present which are independent of Appellees acting as a regulated utility. Because the District Court did not apply the correct standard in deciding the motion to dismiss, the District Court's Order should be reversed.

35

Third, even had the District Court applied the correct standard to conclude that Appellants' claims are based entirely on whether Appellees acted as a regulated utility, that conclusion is not supported by the record. While the Order states Appellants' claims and the regulated utility basis for each claim, the Order ignores the other allegations in the Complaint that provide a non-regulated utility basis for the claims. As stated in Appellants' memorandum in opposition to the motion to dismiss, Appellants "claim that even if those rates were not illegal rates, [Appellees] breached the contracts with tenants, were negligent, were unjustly enriched, and engaged in unfair trade practices by charging tenants a rate that does not correspond with actual usage, and which includes [Appellees'] water and sewer usage in the property common areas." JA343.

For example, the Order characterizes Appellant's breach of contract claim as: "[Appellants] assert that [Appellees] breached the leases by charging unlawful water and sewer costs under South Carolina's utility law." JA425. The Order ignores Appellants' allegations that "[e]ven were the allocation rate a lawful rate, Strata Audubon and Strata Veridian failed to allocate the water and sewer costs based on the number of persons residing in each apartment unit at the respective property as required by the respective lease terms." JA27. Appellants further allege that Appellees knew "the allocated water and sewer costs did not accurately allocate the costs because additional persons not listed on the leases resided in apartment units at the properties

36

and that despite knowing of the inaccuracy they continued to use the inaccurate allocation rate and took no action to correct or ensure the accuracy of the allocation rate, all in breach of the lease. JA27. Contrary to the District Court's conclusion, even were there a determination that Appellees were not acting as a regulated public utility, the lease provided that Appellees would use an accurate allocation rate to bill tenants for water, Appellees failed to use an accurate rate, and that failure was a breach of the lease causing damages to Appellants. Therefore, the District Court erred in dismissing the entirety of Appellants' breach of contract claim for failure to exhaust administrative remedies because an alternative basis of liability exists.

The analysis is the same for other claims. The Order concludes Appellants' negligence claims is based on an alleged "duty to provide water and sewer only at rates approved by the Commission," but Appellants also allege that Appellees breached "common law duties" to the tenants by charging rates "that did not accurately and fairly allocate water and sewerage usage among tenants." JA29. If a landlord owes a common law duty to its tenants to act as a reasonable landlord would when calculating and charging a rate for water and sewerage and Appellees' actions violated that duty, then Appellants are entitled to relief on a theory entirely independent of whether Appellees acted as a regulated public utility.

**IV.  The District Court erred in not applying the primary jurisdiction doctrine and instead dismissing the claims.**

As set forth in Appellants' briefing below but not before the Court here, Appellants contend Title 58 and the Commission decisions interpreting and applying Title 58 are clear that an entity using an allocation formula to provide water and sewerage to tenants is a utility subject to regulation by the Commission.  JA344-349. The District Court, and this Court as well, understandably may conclude that the Commission and the South Carolina courts for any subsequent appeal is the proper avenue for resolution of whether an entity providing water and sewerage to tenants through an allocation formula is a utility subject to Commission regulation.  The regulation of public utilities in South Carolina and application of Title 58 is an area of the law for which the Commission has specialized knowledge and the District Court does not.  Moreover, the application of Title 58 and the regulation of public utilities in South Carolina is a matter of South Carolina law.

The proper method for accommodating those federalism, comity, and specialized knowledge concerns would be for the District Court to exercise the primary jurisdiction doctrine, not to dismiss the case under the exhaustion doctrine where no administrative remedy exists and where remedies within the exclusive jurisdiction of courts do exist.  Under the primary jurisdiction doctrine, where claims within a court's jurisdiction are brought in court but there is a preliminary issue to be decided by an administrative agency, the court refers that issue to the agency and

38

stays the judicial proceedings to provide time for the parties to obtain a ruling from the agency. *See Reiter*, 507 U.S. at 268; *U.S. v. Philadelphia Nat. Bank*, 374 U.S. 321, 353 (1963); *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956). When a court refers an issue to an administrative agency under the primary jurisdiction doctrine, the court does not dismiss the action but rather, retains jurisdiction and stays the action pending the resolution of the issue referred to the agency. *See Reiter*, 507 U.S. at 268 n.3; *Philadelphia Nat.*, 374 U.S. at 353; *Bulldog Trucking, Inc.*, 66 F.3d 1390, 1400 (4th Cir. 1995).

As discussed in the previous sections, if Appellees were acting as a public utility subject to regulation by the Commission and given the lack of an available administrative remedy, Appellants have claims for monetary damages that must be resolved in court. Even if Appellees were not acting as a public utility subject to Commission regulation, Appellants have claims based on other grounds for liability that must be resolved in court. Referring the issue of whether Appellees acted as a regulated public utility would allow the District Court to resolve the state regulatory issue and determine which claims may proceed without the drastic consequence of dismissing Appellants' claims.

## CONCLUSION

Appellants respectfully request this Court reverse the District Court's dismissal of this action.

39

## REQUEST FOR ORAL ARGUMENT

As this appeal involves dispositive issues have not been authoritatively decided and the decisional process would be aided by oral argument, Appellants request oral argument.

<div style="margin-left:40%">

s/ Elliotte Quinn
F. Elliotte Quinn IV
Steven E. Goldberg
THE STEINBERG LAW FIRM, LLC
103 Grandview Drive
Summerville, SC 29483
(843) 871-6522
equinn@steinberglawfirm.com
sgoldberg@steinberglawfirm.com
*Counsel for Appellants*

</div>

40

## CERTIFICATE OF COMPLAINCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f), this brief contains <u>9,057 words</u>.

2. This brief complies with the typeface and type style requirements because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in <u>14-point size Times New Roman font</u>.

<div align="right">

<u>s/ Elliotte Quinn</u>
F. Elliotte Quinn IV
Steven E. Goldberg
THE STEINBERG LAW FIRM, LLC
103 Grandview Drive
Summerville, SC 29483
(843) 871-6522
equinn@steinberglawfirm.com
sgoldberg@steinberglawfirm.com
*Counsel for Appellants*

</div>